And I'll call the next case, 18-2091 United States v. Ravenell. Please the court, counsel. My name is Keith Goody, and I represent the appellant, Mr. Ravenell. I think to begin with, we should consider what actually happened with the DEA in this case. We have two young black men in an SUV that are stopped at an immigration checkpoint. Marijuana is smelled. They go to secondary. There's a consent search of the vehicle. And in a duffel bag in the back, there's about a half a pound of cocaine. Both of the defendants were arrested, Ravenell and Rashid Wilson, I believe. Anyway, my client, Mr. Ravenell, had no criminal record whatsoever. The other person in the car who was driving is... Who owned the car, Mr. Goody? Pardon me? Who owned the car? Mr. Ravenell. And he was a passenger. Wilson was driving. Wilson had a very long criminal record, including drug charges. I think he had robbery and that sort of thing. No criminal record whatsoever. Both Mr. Ravenell and Mr. Wilson were Mirandized, and they both denied that they had any knowledge whatsoever about the cocaine. Since this was a remote area where the immigration stop occurred, it's a couple hours from El Paso, as I understand it. The DEA wasn't there. The DEA was called. And the DEA agent, Mr. Myers, he was planning on coming down to the immigration stop location, and he asked that one of Ravenell or Wilson be put on the phone. And I think the statement of the DEA is of prime importance to this case. Mr. Myers said to Mr. Ravenell, this black man without a criminal record, one of you dumb fuckers, excuse the language, but that's what was said by the DEA, better admit to the cocaine by the time I get there. And I don't feel like doing the paperwork, so one of you dumb fuckers better admit I'm going to have one of the border patrols put you in a cell, and you better come up with whose cocaine it is. Myers also told Mr. Ravenell that he was tired. He'd been working all day. He was obviously irritable. Myers testified at trial and also at the suppression hearing that he spoke to Ravenell saying these words. That was on the phone before he got there? Yeah. How many times did Mr. Ravenell receive or sign off on the Miranda warnings? Two. First, when he was arrested, when the cocaine was discovered. And then when the DEA agent actually arrived at the immigration area and interviewed Mr. Ravenell. Although I would point out that... How old was Mr. Ravenell? 27. And had he been to college? Well, he said that he went to college on some sort of basketball scholarship or something. That is just unclear from the record. He certainly had some kind of high school education, although, as I pointed out in the brief, his language was unusual. He referred to blood clots as clots. I had blood clots. My mother had blood clots. One thing I didn't say in the brief, he talked about when he was talking about a specific person or a specific whatever, he said Pacific, P-A-C-I-F-A-C. So, he obviously is... I don't know if you would call it ill-educated, but not particularly educated. And he certainly had no experience in the criminal justice system. And going back to the question about the Miranda warnings, of course that's a consideration here, but in Lopez, which I cited in my brief, the Tenth Circuit says a suspect cannot be subject to invalid coercion, and that's what I'm talking about, coercion, threatening, that sort of thing. To get to the point of what I understand, the main point of your argument in support of the District Court error in denying your suppression motion is that during the actual interview, when the D.E. agent shows up, that he says, your client says, Mr. Brown says, that he was coerced because they told him that he wouldn't get his car back and he needed to get the car to his mother, who had health issues, and they said essentially until he confessed that he wouldn't get his car back. But the problem we have is that the District Court said, and the officers said, nope, that never happened, and he said it did happen, and the District Court chose to believe the officers, so I'm not sure how we can factor that in here. Well, the way to factor it in is this. The District Court made certain findings of fact. However, the legal conclusion was that there wasn't coercion or a threat that overbought for Mr. Ravenel's will. Well, the legal conclusion was based on a finding that the District Court believed the officers on that one issue, and therefore, unless that's clearly erroneous, which I don't think we can say that, that was the factual basis for the legal, at least part of the factual basis for the legal conclusion. That wasn't your only argument, but it seemed to be the primary one, and it seems to be the primary one on appeal. Well, part of it, but the point is this, okay, and I think this is critical. The finding on coercion just generally, that it wasn't coercion, is not a finding of fact. It is a mere legal conclusion. Isn't it based upon facts? Right. Well, you have to consider the facts. And whether or not it was coercion becomes a question of law. It becomes a question of law, but you... But if there were no facts to support a finding of no coercion, then there'd be a problem. But here we've got two different stories that were both given to the judge and to the jury. Does that not mean anything? You are in the position of the district court because you are required to... We do not second-guess findings of fact made by the district court. I'm not asking you to second-guess the findings. I'm telling you this, that because you exercised de novo review on the issue of coercion, you can consider all the facts. In fact, the standard is that you're supposed to consider the totality of evidence. And that includes the statement. That includes Ravenel's testimony about the vehicle. That includes the fact... We don't reconsider credibility findings that the trial court made. And that was a credibility finding is what I'm suggesting. Do you disagree that that was a credibility finding that the trial court made? It's a credibility finding, but it's your responsibility as a circuit court to consider the totality of the evidence. Just because the district court said, Oh, well, he's not credible in this area and the immigration agents are more credible, that doesn't mean that this court just cedes the responsibility to the district court. It's your responsibility to consider the totality of evidence. And I think there's plenty of reason to wonder about all of this because whatever you say, that threat did not help. And it did not help Mr. Ravenel. Now, which threat are you speaking of? The car or the use of profane language in the initial telephone conversation? Well, it's more than a profane... I'm talking about the statement and having him placed in a cell with Mr. Wilson so they could decide between the two of them. Well, how is that coercion? Putting them in the cell together? It's all part of the... Well, if they had not put them in the cell together, you'd be arguing that was coercion. Because they didn't get a chance to talk to each other. I'm arguing that that was part of the intimidation. We have an intimidating statement. I don't know that anybody could disagree with that. Maybe the district judge disagreed and said it wasn't coercion and wasn't a threatening statement. But that's just simply not true. Oh, come on. You've heard these teenage kids and young men talk that way all the time. No, no. Especially in a locker room. Yes, they do. And you know that. That may be the case. But there's a tremendous difference if you're caught up in some kind of legal hassle, which Ravenel was here, obviously, and you have a white DEA agent saying, you dumb motherfuckers, you better tell me whose cocaine that is. If that isn't a threat, I don't know what isn't. Why didn't Ravenel say, well, it's his? And the other guy would say, no, it was his. Why do people falsely confess? You know, false confessions happen every day in America because of this kind of conduct. And I think that, you know, I'm not arguing actual innocence because I don't know. But I'll tell you what. There's plenty of red flags in this record to indicate that Ravenel falsely confessed to this crime. And sure, the business about the car was part and parcel of it. And just because the district court said, well, they didn't say that they were going to take his car if he didn't confess. But that certainly, you could conclude from the record that the car was a considerable concern of his. And he did want to get that car back to his mother. But he'd been threatened at the time. And the combination of the threat, the car, placing him in that cell with Wilson, just gives rise to all kinds of questions about whether he confessed falsely or not. And, I mean, the logical conclusion from the facts as I see it, and even the DEA agent wondered about this, is it was Wilson's dope. Now, for you to ask me why didn't Ravenel say it was Wilson's dope, I can't answer that question because I'm not in the mind of a 27-year-old black man being intimidated by a DEA agent. And I'll also point out another thing about the Miranda warnings. Now, was this question of black versus white before the district court at all? It doesn't make any difference. It wasn't. It wasn't before the district court. No, that's true. Thank you. They didn't argue that. But I think it's a legitimate argument in this court because this court has to consider the totality of the circumstances where Ravenel confessed and was arrested. The totality of the circumstances is a young black man who's being intimidated by a DEA agent. And we all know, we don't live in a bubble around here. We all know what black men are told by their mothers. Cooperate. Do what you're told. Watch out because they're dangerous. Can I ask you, I think you have another, I think I read your brief as raising a separate issue about the statement that Officer Meyer made. And you seem to be asking this court to impose sanctions or suppression as a sanction simply for that statement. But I don't see where that was requested below. I'm not really interested in that. I'm asking you about it. Was that raised below? No, no. Okay. And I'm not, that isn't my interest. My real interest is the coercion and the threat. Well, it was asserted in your brief, or at least I understood it to be asserted. But perhaps I misunderstood the brief. Is that what you're saying? I raised it, but I didn't put it. It's just something that I said. Maybe I shouldn't have said it, but I'm more concerned with the coercion. All right. So I guess I'm just about done. You're out of time. Hey, thank you. Thank you, counsel. I really appreciate the opportunity to come before the court. Thank you. Thank you. May it please the court, counsel. My name is Allison Jaris, and I represent the United States in this matter. In this case, there is no dispute that prior to confessing, Mr. Ravenel twice received Miranda warnings. He received the first set of warnings at 4.25 p.m. immediately after his arrest. The second time he received Miranda warnings was at 9.53 p.m. immediately before the interview with DEA agents. Both times he received the warnings orally and in writing, and both times he signed a written form waiving his right to be silent and agreeing to speak with the officers. This is strong evidence of voluntariness. According to the Supreme Court, maintaining that a statement is involuntary, despite the valid provision of Miranda warnings, requires unusual stamina. This is because the Supreme Court carefully fashioned Miranda warnings to prevent government compulsion and protect suspects of amendment rights. In most cases, the court can assume that those Miranda warnings function as designed. In this case, I think what stands out is not the egregiousness of the government conduct, but the scrupulousness with which they provided Mr. Ravenel the rights. Let's start with the egregiousness. That was egregious. It's egregious. And why wouldn't we assume that Officer Meyer, who made that egregious statement, why wouldn't we assume he was intimidating and it was an attempt to intimidate and that that intimidation lasted into the subsequent interview when he showed up instead of being on the phone? It was egregious. The court is correct. Agent Meyer is here, did curse at the defendant. The government does not dispute that. He didn't just curse. He said one, you know, I'm not going to repeat the cursing, but he also said one of both of you, I've been working all day, I'm tired, and I expect you all to tell me the truth when you get out here. And then he ordered that the two of them be put together in a cell, I take it, for five minutes exactly, an odd circumstance. And the two of them, these two individuals, work it out whose responsibility is it. They put them together for exactly five minutes. They didn't work it out. Neither one of them took responsibility. That's sort of a continuing circumstance here. That was part of his phone call and the orders he gave subsequent to that. Certainly, and the government's not asking that the court not consider those matters. The test is totality of the circumstances, and the court should and ought to consider those matters. The district court did consider those matters in this case. The district court was extremely bothered by the comment. That's correct. The district court expressed concern about it. He admonished the agent on the record, said that he felt the comments were inappropriate. But he ultimately determined that this phone call and the arranged encounter afterwards were not threatening. That's a subsidiary factual finding that this court reviews for clear error. Here I do think there are sufficient facts to support the district court's conclusion that the phone call was not threatening. Agent Myers testified at the suppression hearing. He testified that he was talking in a stern voice, but he wasn't yelling or screaming at the defendant. The defendant, Mr. Ravenel, testified about this phone call both at the suppression hearing and then again at the trial. At the trial, Mr. Ravenel actually denied being afraid of Agent Myers as a result of the phone call. I think these facts support the district court's conclusion. I think that the district court was well within reason to conclude that what Agent Myers was doing here was accurately advising the defendant of the situation he was facing, letting him know it was serious, that one of the two men would be going to jail, and admonishing him to be honest. The Tenth Circuit has upheld similar techniques in the past as non-coercive, and I think the same reasoning applies in this case. Even if the court disagrees and finds that these were threatening comments, that's not dispositive, that's not the end of the analysis. We know from United States v. Rodoba that even if there's a threat, that doesn't mean there was coercion. Once again, the court always looks at the totality of the circumstances to determine if the defendant's will was overborne by the government's conduct, if there was so much coercion that his capacity for self-determination was critically impaired. Here there is many other factors to counteract any potential government pressure, most notably those two Miranda warnings. In addition to providing the two full sets, each time agents questioned the defendant, they reminded him of his Miranda rights. The first agent to question the defendant about the offense was Border Patrol Agent Mora. He came in and had a quick, about one-minute conversation with him about the cocaine. Before that conversation, Border Patrol Agent Mora first asked, can I ask you questions without a lawyer present? And the defendant said yes. Then Agent Mora said, you understand you don't have to answer these, but I want to ask questions. And the defendant said, it's fine. I'm referring here to Volume 1 of the Record on Appeal, page 198. Similarly, Agent Myers, during that phone call that's been challenged, after the introductions were made, the first thing he did was ask the defendant if he'd been read his rights and if he understood his rights. And the defendant answered yes, sir, to both of those questions. So through these repeat warnings, the agents communicated to Mr. Rabinell both that he had the right to remain silent and that they intended to respect that right. So I think that provides context against the conduct of which defendant compliance should be viewed. There was a phone call. Was there a recording of the phone call? No, Your Honor. I don't believe there was a recording in this case of the phone call or of the ultimate DEA interview. There was another officer present, though. Did he testify to the same statement? To the phone call? When Officer Meyer was speaking to the defendant, there was no recording of that, but that was a phone call when he made the cursing statement. And there was another officer present there in the room with the defendant, correct? That is correct. Agent Mora put him on the phone with Agent Myers. Did Agent Mora also testify about what he did? Did he hear the statement? If he did, he didn't testify about it. Agent Mora was in the room, but I have no knowledge of whether he could overhear Agent Myers part of the conversation. I'm just wondering. And there is no recording of that phone call? That's correct, Your Honor. And since it is a very fact-dependent test, I do think that details matter here. Defense counsel read out what Mr. Rabinell said about the phone call, but here the district court specifically found the agents more credible than Mr. Rabinell at the suppression hearing. So I think what we're looking at on appeal is not Mr. Rabinell's recounting of that phone call, but the agent's. They're largely similar, but there's a few differences. Mr. Rabinell said that the agent said, you know, you better admit or one of you better confess. That's not what Agent Myers testified to. His testimony was that he said, one of you two dumb, and he said MFs on the stand. Is going to go to jail tonight, one or both of you. I've been working all day, I'm tired, and I expect you all to tell me the truth when I get out there. So I think that that's what the court needs to be looking at on appeal is that statement that Agent Myers testified about. So he testified differently about that statement than the defendant's version of it? That's correct. There was a lot of overlap. Did the court indicate which version of it it believed? So the district court in this case issued an oral ruling in a hearing on the suppression motion. It made some factual findings and then found, just generally speaking, that it was adopting the testimony of the agents. Both the Border Patrol agents and the DEA agents. He said that he found that testimony of the agents credible. And so that's why the government's relying on that testimony of the agents on appeal here today. There are many other factors in this case as well that support a finding of voluntariness. The defendant here was an adult at the time of the confession. He had a high school diploma and some college education. He didn't finish college. I believe he testified it was one year. He was not detained for an inordinate amount of time prior to the confession in this case. He was treated well by Border Patrol while he was being detained. He was given food. He was given water. He was placed in a holding cell where he had blankets and was allowed to rest. He wasn't pestered by the agents repeatedly. That was their testimony that they only questioned him that one time, Agent Mora, about the offense for just about a minute. And then left him alone aside from asking for biographical information and things necessary to fill out the paperwork. The questioning in this case was very short compared to what we often see. As I just stated, the questioning by Border Patrol was about a minute and the questioning from DEA was about 30 minutes according to the agents. So this wasn't a case where there was three hours of questioning where they were wearing down the defendant's will. According to the DEA agents, when they showed up, gave him that second set of Miranda warnings, and asked him to tell his side of the story, he pretty much immediately confessed at that point in time. And finally, the defendant received multiple Miranda warnings, essentially Miranda warnings on top of Miranda warnings in this case. So the government's position here is that all of this indicia of voluntariness far outweigh any government coercion that may have occurred. Unless there are any questions. Actually, I want to ask you about the car, the vehicle, getting the vehicle. Could you just briefly address how that might impact the analysis? So on appeal, I don't think it impacts the analysis at all. In the district court, the defendant argued that the reason he confessed, indeed he testified the only reason he confessed, was to secure the release of the vehicle so that it could go back to his family. He claimed that the agents told him that if he signed this false confession, that they would release the car. The agents all denied that claim. And the district court considered both the testimony of Mr. Ravenel and the testimony of the agents, and he found the agents more credible. My understanding from reading the defendant's brief on appeal was that he was not challenging that credibility determination. So for the purposes of appeal, I think that we must accept that there were no such promises in relation to the car. So opposing counsel, I think, today suggested that it still could be considered part of the totality, and I assume you're disagreeing with that? Yes, the government would strongly object. First of all, I didn't see that argument raised in the brief. If it is being raised here today, I don't think there's any basis in law for that. The court reviews the ultimate legal conclusion as regards to coercion de novo. That's correct. But as far as the facts, those are reviewed for a clear error. And in a case like this where you have people testifying, you know, one person says A, another person says B, and the district court hears both sides and makes a credibility determination, I don't see any basis to overturn that on a clear error, you know, review. Thank you. Are there any other questions? Thank you. Thank you, counsel. I think you're out of time, so, yeah. The case will be submitted on the brief, so we appreciate your arguments, and counsel, excuse. Thank you.